JDN

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Ybarra, | No. CV 13-1126-PHX-DGC (JZB) |
| Plaintiff, | |
| vs. | **ORDER** |
| Federal Bureau of Prisons, et al., | |
| Defendants. | |

Plaintiff Robert Ybarra brought this civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706 (Doc. 62). He sues six Federal Bureau of Prisons (BOP) officials: (1) Cherry Phillips, Unit Manager at the Federal Correctional Institution (FCI)-Phoenix; (2) Yolanda Fortune, Counselor at FCI-Phoenix; (3) K. Mathesson, Case Manager at FCI-Phoenix; (4) T. Simmons, Counselor at FCI-Phoenix; (5) Robert E. McFadden, BOP Western Regional Director; and (6) Harrell Watts, BOP Administrator (*id.*). Plaintiff alleges that Defendants violated his Fifth Amendment due-process rights when they unlawfully seized funds from his inmate account (*id.* at 5). Before the Court is Defendants' Motion for Summary Judgment (Doc. 66).[1]

---

[1] Also before the Court are Plaintiff's Motion for Discovery (Doc. 87), and Plaintiff's Motion for Disposition, which asks that Court to rule on his discovery motion (Doc. 90). These two motions will be denied as moot.

The Court will grant the motion, dismiss Plaintiff's APA and *Bivens* claims, and terminate the action.

**I.     Background**

    **A.     Applicable BOP Policy and Federal Statute**

Plaintiff's claim concerns the seizure of funds pursuant to the Inmate Financial Responsibility Program (IFRP) (Doc. 62).  In 1987, the BOP implemented the IFRP, a "voluntary" program whereby inmates' in-prison income is applied to their financial obligations, including fines, court costs, and restitution.  *See* 28 C.F.R. §§ 545.10-545.11.  Although the program is voluntary, failure to participate results in numerous deleterious effects, e.g., loss of furlough, eligibility for job assignments, performance pay, housing priority, access to community-based programs, etc.  *See* 28 C.F.R. § 545.11(d).

The Mandatory Victims Restitution Act of 1996 (MVRA) requires that the district court, in an order of restitution, award each victim the full amount of their loss, regardless of the defendant's economic circumstances.  18 U.S.C. § 3664(f)(1)(A).  Under the Act, once the amount of restitution owed to each victim is determined, "the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid . . . ."  18 U.S.C. § 3664(f)(2).  The MVRA charges the district court with setting the terms of the restitution payments and that duty cannot be delegated.  *United States v. Gunning*, 401 F.3d 1145, 1149-50 (9th Cir. 2005) ("*Gunning II*") (citing *United States v. Gunning*, 339 F.3d 948, 949 (9th Cir. 2003) ("*Gunning I*")).  Although the MVRA prohibits courts from delegating the responsibility to set restitution payment schedules, nothing in the statute or case law limits the operation of an independent program like the IFRP, which helps inmates develop financial plans and encourages them to voluntarily make restitution payments above what is mandated in their sentencing orders.  *United States v. Lemoine*, 546 F.3d 1042, 1048-49 (9th Cir. 2008).

//
//

B. **Plaintiff's Participation in the IFRP**

In November 2007, Plaintiff was transferred to FCI-Phoenix (Doc. 62 at 5). In May 2008, he was hired by the Federal Prison Industries, referred to as UNICOR (*id.*). Around that time, Plaintiff was told that he must agree to participate in the IFRP or suffer consequences, which included losing his UNICOR job (*id.*). He therefore signed an IFRP contract, which required 50% of his wages to be paid towards restitution through the IFRP (*id.*).

Plaintiff filed an administrative remedy challenging the IFRP withdrawals on the ground that his sentencing order did not set the amount and schedule for restitution payments (*id.* at 5-6). His administrative remedy was denied at every level, and Watts denied his final Central Office appeal on July 15, 2009 (*id.* at 6).

C. **Petition for Writ of Habeas Corpus**

On July 8, 2009, Plaintiff filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, arguing that the BOP wrongfully collected restitution payments from him under the IFRP without a lawful sentencing order as required by the MVRA. CV 09-1447-PHX-DGC (JRI), Doc. 1. On December 21, 2010, the Court granted the Petition, finding that the restitution order issued by the sentencing court was an invalid delegation to the BOP and ordered the BOP to stop collecting restitution payments from Plaintiff. *Id.*, Doc. 15 at 3-4. In its Order, the Court denied Plaintiff's request that the BOP return the amounts already collected from him because he failed to present any argument or legal authority to support his request. *Id.* at 4. According to Defendants, the amounts collected from Plaintiff between May 2008 and December 2010 totaled $3,178.75 (Doc. 65, Defs.' Statement of Facts (DSOF) ¶¶ 10, 12).

Plaintiff then filed a motion for an order to show cause why the respondent should not be held in contempt for failing to comply with the December 21, 2010 Order. CV 09-1447-PHX-DGC (JRI), Doc. 17. Plaintiff stated that after the Court granted his Petition, the BOP placed him on IFRP refusal status and sanctioned him by removing him from his UNICOR job. *Id.* Plaintiff was told that if he wanted to be removed from IFRP refusal

- 3 -

status, he had to enter another contract to agree to pay restitution under the IFRP. *Id.* He therefore signed a new contract in January 2011 and returned to his UNICOR job.[2] *Id.*

The Court denied Plaintiff's motion for an order to show cause, finding that nothing in its December 21, 2010 Order precluded BOP from placing Plaintiff on refusal status and that federal statutes permitted the BOP to implement a financial plan and impose penalties if an inmate refuses to participate. CV 09-1447-PHX-DGC (JRI), Doc. 20.

Plaintiff appealed the denial of his motion to the Ninth Circuit Court of Appeals. *Id.*, Doc. 23. On January 19, 2012, the Ninth Circuit affirmed the district court's denial of the motion and, on March 13, 2012, the Ninth Circuit issued its Mandate and the judgment took effect. *Id.*, Doc. 28 (No. 11-15874). The appellate court stated that, although the BOP began collecting restitution payments again after the December 21, 2010 Order, these payments were collected after Ybarra voluntarily entered into a new contract and agreed to participate in the IFRP. *Id.*

### D. Complaint

On May 24, 2013, Plaintiff initiated the present lawsuit pursuant to *Bivens* and the APA (Doc. 1). He filed his First Amended Complaint on August 11, 2014 (Doc. 62). Plaintiff alleged that Fortune and Simmons forced him to participate in the IFRP without a lawful sentencing order that set a payment schedule and amount of payment for restitution and, consequently, they violated his due process rights under the Fifth Amendment (*id.* at 5-7). Plaintiff alleged that Matheson and Phillips failed to stop the unlawful taking of his money despite being notified of the violation and therefore also violated Plaintiff's due process rights (*id.*). And Plaintiff claimed that McFadden and Watts failed to correct the due process violations by the FCI-Phoenix employees and thus

---

[2] Pursuant to this new IFRP contract signed in January 2011, restitution payments began again in February 2011 (*see* Doc. 65, DSOF ¶ 16; Doc. 79, Pl.'s Controverting Statement of Facts ¶ 16 & Pl.'s Statement of Fact ¶ 4).

- 4 -

violated his due process rights (*id.*). Plaintiff sued for compensatory and punitive damages (*id.* at 10).

### E. Motion for Summary Judgment

On October 9, 2014, Defendants filed their Motion for Summary Judgment (Doc. 66). They seek judgment on the grounds that (1) the APA claim must be dismissed because Plaintiff seeks only monetary relief; (2) Plaintiff's *Bivens* claims are untimely; (3) Defendants are entitled to absolute immunity; and (4) Defendants are entitled to qualified immunity (Doc. 66).

The Court issued the Notice required under *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), which informed Plaintiff of the requirements under Federal Rule of Civil Procedure 56 (Doc. 67). In November 2014, Plaintiff filed his opposition to the Motion for Summary Judgment (Doc. 78), and he subsequently filed a Motion for Discovery and a Motion for Disposition (Docs. 87, 90).

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*,

*Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Administrative Procedure Act

The APA authorizes suits for declaratory or injunctive relief, but it does not provide for money damages. 5 U.S.C. §§ 702, 703; *see King v. U.S. Dep't of Veterans Affairs*, 728 F.3d 410, 416 (9th Cir. 2013). Plaintiff sues for money damages; he does not seek injunctive relief. Even so, any claim for injunctive relief would be moot because the BOP terminated unauthorized deductions in accordance with the December 21, 2010 habeas Order, and it was determined that the IFRP contracts between the BOP and Plaintiff after that date were voluntary. CV 09-1447-PHX-DGC (JRI), Doc. 28.

Consequently, only declaratory relief is appropriate. Plaintiff did not seek declaratory relief (Doc. 62 at 10). Plaintiff has nonetheless already received declaratory relief based upon the Court's prior determination that the BOP improperly established a restitution schedule and deducted restitution from Plaintiff's account. Under these circumstances, the Court will dismiss Plaintiff's APA claim as moot.

### IV. Statute of Limitations

The statute of limitations for a *Bivens* action is defined by the relevant state's personal injury statute. *Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991). Under

Arizona law, the statute of limitations for personal injury actions is two years. Ariz. Rev. Stat. § 12-542.

Although state law provides the statute of limitations, federal law determines when a civil rights claim accrues. *Morales v. City of L.A.*, 214 F.3d 1151, 1154 (9th Cir. 2000). Under federal law, the time limit on a cause of action begins to run when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Trotter v. Int'l Longshoremen's & Warehousemen's Union Local 13*, 704 F.2d 1141, 1143 (9th Cir. 1983).

Defendants argue that the statute of limitations began to run on Plaintiff's *Bivens* claim when each Defendant took action to have money taken from his account or failed to put a stop to the removal of money from his account or, at the latest, on December 21, 2010, when the Court entered its order granting Plaintiff's habeas Petition (Doc. 66 at 6-7).[3] Defendants maintain that since all those dates—when Defendants acted and when the Petition was granted—occurred more than two years before Plaintiff filed this *Bivens* action (in May 2013), the action is untimely (*id.*). Plaintiff counters that his claim constitutes a "continuing violation" because the BOP continued to take money from his account under the IFRP and did so until December 16, 2011 (Doc. 78 at 3-5). Thus, Plaintiff submits that the statute of limitations began to run on December 16, 2011, which is within two years of the date he filed his Complaint (*id.* at 5).[4]

In Plaintiff's habeas action, it was determined that only the restitution payments collected prior to the December 21, 2010 Order were unauthorized, and that when the BOP collected restitution payments again thereafter, it was because Plaintiff voluntarily entered into a new contract and agreed to participate in the IFRP. CV 09-1447-PHX-

---

[3] In their reply, Defendants specifically argue that the limitations period began to run on July 15, 2009, the date Watts denied Plaintiff's Central Office appeal (Doc. 81 at 4).

[4] Plaintiff concludes that the statute of limitations commenced on December 16, *2014*, but this appears to be a typo given his argument and the record showing that pursuant to a new contract entered into after December 21, 2010, Plaintiff made payments through the IFRP from February to December 2011 (Doc. 78 at 3-5; Doc. 65, DSOF ¶¶ 16-19).

- 7 -

1  DGC (JRI), Docs. 15, 20, 28.  Accordingly, Plaintiff's "continuing violation" argument
2  fails.
3        Although Plaintiff suspected in 2008 and 2009 that Defendants were unlawfully
4  taking his money through the IFRP, that suspicion was based on what he had been told by
5  another inmate (Doc. 62 at 5).  "A claim does not accrue when a person has a mere
6  hunch, hint, suspicion, or rumor of a claim[.]"  *McIntyre v. United States*, 367 F.3d 38, 52
7  (1st Cir. 2004) (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)).
8  The Court finds that Plaintiff actually knew or had reason to know that Defendants'
9  actions were unlawful on December 21, 2010, when the Court entered its Order granting
10 his habeas Petition.  *See* CV 09-1447-PHX-DGC (JRI), Doc. 15.  That is the date he
11 learned of his injury and his *Bivens* claim accrued.
12       That does not end the inquiry, however, because the Court is required to apply any
13 state rule for tolling to a claim brought under *Bivens*.  *See Papa v. United States*, 281
14 F.3d 1004, 1009 (9th Cir. 2002) (tolling provisions for *Bivens* claims are borrowed from
15 the forum state).  Arizona law provides for the tolling of the statute of limitations for the
16 period during which a plaintiff was less than 18 years old or of unsound mind.  Ariz. Rev.
17 St. § 12-502.  The limitations period is also tolled during mandatory exhaustion of
18 administrative remedies.  *See* Ariz. Rev. Stat. § 12-821.01(c); *Brown v. Valoff*, 422 F.3d
19 926, 943 (9th Cir. 2005).  And Arizona courts recognize equitable exceptions to the
20 application of a statute of limitations when necessary to prevent injustice.  *Nolde v.*
21 *Frankie*, 964 P.2d 477, 480 (Ariz. 1998).  Under Arizona's equitable tolling doctrine, a
22 plaintiff may sue after the statutory time period for filing a complaint has expired if he
23 was prevented from filing in a timely manner due to sufficiently inequitable
24 circumstances.  *McCloud v. State*, 170 P.3d 691, 696 (Ariz. App. 2007).
25       In this case, there is a question whether Plaintiff's appeal in his habeas action
26 tolled the statute of limitations.  The Ninth Circuit did not rule on Plaintiff's appeal until
27 January 2012, and the Mandate did not take effect until March 2012.  *Ybarra*, No. 11-
28

15874 (9th Cir. March 13, 2012). Because these dates fall within the two-year limitations period, if the appeal warrants tolling, Plaintiff's *Bivens* claim is not time-barred.

But the Ninth Circuit has held that habeas corpus proceedings do not delay accrual of § 1983 or *Bivens* claims. *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 761 (9th Cir. 1991). The plaintiff in *Bagley* was convicted in 1977 for narcotics convictions. *Id.* at 759. In May 1980, while in prison, he obtained information through the Freedom of Information Act and learned that, contrary to the information given to him by the government before his trial, two government witnesses received compensation for their assistance. *Id.* On that basis, the plaintiff filed a motion under 28 U.S.C. § 2255 to vacate his conviction, and in 1986, after a reversal and remand by the Supreme Court, the Ninth Circuit provided habeas relief and reversed the conviction based on the government's failure to disclose impeachment evidence. *Id.* In 1988, the plaintiff filed civil rights actions against the offending state and federal officials. *Id.* The Ninth Circuit found that the plaintiff's § 1983 and *Bivens* claims accrued for statute of limitations purposes when he first learned of the injury giving rise to his claims, which was in May 1980 when he learned that government witnesses were given compensation, and not in 1986, when his conviction was reversed. *Id.* at 760, 762. The plaintiff's civil rights claims brought in 1988 were therefore time-barred. *Id.* (applying Washington's three-year statute of limitations).[5]

The Court finds that Plaintiff's subsequent motion and appeal in his habeas proceeding do not constitute grounds for equitable tolling because the habeas proceeding did not delay accrual of his *Bivens* claim. *See Bagley*, 923 F.2d at 761-62. Nor did the pendency of his appeal prevent him from filing his *Bivens* action. *See Rhodes v. Chavez*, CV 12-1971-PHX-DGC, 2013 WL 5780839, at *2 (D. Ariz. Oct. 25, 2013) (finding the plaintiff's *Bivens* claim was time-barred and rejecting argument that claim did not accrue until Supreme Court denied certiorari on his petition for a writ of habeas corpus; because

---

[5] Under Washington law, the statute of limitations was tolled while Bagley was in prison, and, thus, it did not begin to run until July 9, 1982, upon his release. 923 F.2d at 763. But this tolling did not save his claim from being time-barred.

- 9 -

the plaintiff did not challenge his conviction or sentence, the plaintiff was not prevented from bringing his *Bivens* claim during the pendency of his habeas corpus petition).

In short, Plaintiff learned of his injury underlying his *Bivens* action when the Court granted his habeas Petition on December 21, 2010; therefore, that is the date his claim accrued. He did not file this action until May 24, 2013, more than two years later, and no tolling provision applies (*see* Doc. 1). Accordingly, Plaintiff's *Bivens* claim is time-barred and will be dismissed on this basis.

The Court need not address Defendants' remaining arguments regarding absolute and qualified immunity.

## V.     Pending Motions

Plaintiff's Motion for Discovery seeks all documents related to the restitution withdrawn from his account by FCI-Phoenix, all e-mails related to his restitution payments, and all contracts concerning his IFRP plans (Doc. 87). This evidence is not relevant to any ground for tolling the statute of limitations; therefore, it would not affect the conclusion that Plaintiff's *Bivens* claim is time-barred. The remaining motions will be denied as moot.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 66), Plaintiff's Motion for Discovery (Doc. 87), and Plaintiff's Motion for Disposition (Doc. 90).

(2)     Defendants' Motion for Summary Judgment (Doc. 66) is **granted**; Plaintiff's APA claim is dismissed as moot, and Plaintiff's *Bivens* claim is dismissed as time-barred.

(3)     Plaintiff's Motion for Discovery (Doc. 87) and Motion for Disposition (Doc. 90) are **denied as moot**.

(4) The Clerk of Court must enter judgment accordingly and terminate the action.

Dated this 17th day of April, 2015.

David G. Campbell
United States District Judge